# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

**LATANGA L. GRIFFIN, on behalf of**
**JOHNNY SMITH (deceased)**                                    **PLAINTIFF**

**V.**                                              **NO. 4:20-CV-185-JMV**

**KILOLO KIJAKAZI,**
*Commissioner of Social Security*                      **DEFENDANT**

## FINAL JUDGMENT

This cause is before the Court on the Plaintiff's complaint pursuant to 42 U.S.C. § 405(g)

for judicial review of the January 13, 2020, final decision of the Commissioner of the Social

Security Administration (the "Commissioner") denying the application for disability insurance

benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. §§ 416(i), 423. The parties

have consented to entry of final judgment by the United States Magistrate Judge under the

provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit.[1]

For the following reasons, the Commissioner's decision is affirmed.

## PROCEDURAL HISTORY

On March 2018, Johnny Smith ("JS") filed an application for DIB, alleging disability

commencing on May 1, 2014, due to hypertension, depression, anxiety, epileptic seizures, and

"blackouts." *See* Tr. 95, 108, 196-200, 224. After the agency denied JS's application initially and

---

[1] Judicial review under 42 U.S.C. § 405(g) is limited to two inquiries: (1) whether substantial evidence in the record
supports the Commissioner's decision and (2) whether the decision comports with proper legal standards. *See Villa
v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is 'such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)
(quoting *Richardson v. Perales*, 402 U.S. 389(1971)). "It is more than a mere scintilla, and less than a preponderance."
*Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990)). "A
decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the
decision.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citations omitted). The court must be careful not
to "reweigh the evidence or substitute . . . [its] judgment" for that of the ALJ, *see Hollis v. Bowen*, 837 F.2d 1378,
1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v.
Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

on reconsideration, JS requested an administrative hearing. *Id.* at 122-38. JS and his attorney attended the administrative hearing before an Administrative Law Judge ("ALJ") November 4, 2019. *Id.* at 63-92. JS, Antoinette Montgomery, and a vocational expert testified.

After reviewing the evidence, the ALJ issued his decision on January 13, 2020, concluding that Plaintiff was not disabled for purposes of the Act. *Id.* 18-29. The ALJ evaluated Plaintiff's claims pursuant to the five-step sequential evaluation process. At step one, the ALJ noted that Plaintiff appeared to have engaged in substantial gainful activity after his alleged disability onset date of May 1, 2014 but reserved a finding on the issue of substantial gainful activity and proceeded to step two of the sequential evaluation process. *Id.* at 21. At step two, the ALJ determined that Plaintiff's hypertension, seizure disorder, depression, and borderline intellectual functioning constituted severe impairments. *Id.* At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment for presumptive disability. *Id.* at 22. Next, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations:The claimant can never climb ladders, ropes, and scaffolds, and never work at heights or around hazards. The claimant should perform only simple repetitive tasks, meaning the claimant can understand, remember, and carry out simple tasks. He should not perform fast production-pace jobs, meaning jobs with numeric goals to be performed within a strict guideline. At step four, considering Plaintiff's RFC, the ALJ found Plaintiff could not perform his past relevant work. *Id.* at 27. At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform, such as a kitchen helper, cook helper, and laundry laborer. *Id.* at 28, 88-90. Accordingly, the ALJ determined Plaintiff was not disabled for purposes of the Act, and therefore he was not

entitled to receive DIB during the relevant period, i.e., from his alleged disability onset date of May 1, 2014, through January 13, 2020, the date of the ALJ's decision. *Id.* at 28-29.

On August 18, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's January 13, 2020, decision the Commissioner's final decision for purposes of judicial review pursuant to 42 U.S.C. § 405(g). *Id.* at 6-9, 190. On October 1, 2021, JS's counsel filed a suggestion of death, notifying the court of the death of JS. [40]. On October 13, 2021, this court permitted Latanga L. Griffin (Plaintiff) to be submitted in place of JS. [43].

## LAW AND ANALYSIS

The Plaintiff raises the following specific issues for review: (A) Does substantial evidence support the ALJ's step three finding that JS did not meet or medically equal a listed impairment (Listing)?; (B) Does substantial evidence support the ALJ's residual functional capacity (RFC) finding?; (C) Did the ALJ properly evaluate JS's symptoms; (D) Did the ALJ err at step five of the sequential evaluation process?; and (E) Did the ALJ properly develop the record?

### I.     Standard of Review & Burden of Proof

The Commissioner's factual findings shall be conclusive if substantial evidence supports them. 42 U.S.C. § 405(g).  As earlier noted, substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation and internal quotations omitted). The substantial evidence standard has been compared to the deferential clearly erroneous standard. *Id.*, citing *Dickinson v. Zurko*, 527 U.S. 150 (1999). The Court does not re-weigh the evidence nor, in the event of evidentiary conflict or uncertainty, substitute its judgment for the Commissioner's, even if the court believes the evidence weighs against the Commissioner's decision. *See Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018).

The ALJ has the sole responsibility for determining a claimant's disability status. *See Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). The claimant has the burden of proof on the first four steps of the Commissioner's sequential evaluation process. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). At step five, the Commissioner has the burden to produce "evidence about the existence of work in the national economy." *See* 20 C.F.R. § 404.1512(b)(3). The Commissioner may meet this step five burden by relying on the Medical-Vocational Guidelines or vocational expert testimony. *See* 20 C.F.R. § 404.1520(g). Once the Commissioner shows that a claimant is able to perform a significant number of jobs, the burden shifts to the claimant to rebut this finding. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

Turning now to the litany of issues Plaintiff has raised – to one degree or another -- in her nearly 60 pages of briefing:[2]

### (A)  Has Plaintiff Demonstrated that JS Met or Medically Equaled a Listed Impairment?

Plaintiff argues that the ALJ should have found that JS met or medically equaled several listed impairments (the "Listings"). First, Plaintiff argues that the ALJ erred by finding that the complained of seizures did not meet Listing 11.02. Listing 11.02, which corresponds to Epilepsy, requires documentation with a detailed description of a typical seizure and is meet when either A, B, C, or D is satisfied. In this case, Plaintiff argues she met :11.02 A and C which provide respectively A. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once a month for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); or C. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once every two months for at least four consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following: (1). Physical functioning

---

[2] L. U. Civ. R. 7(b)(5) ("Movant's original and rebuttal memorandum briefs together may not exceed a total of thirty-five pages, and respondent's memorandum brief may not exceed thirty-five pages").

(see 11.00G3a); or (2) Understanding, remembering, or applying information (see 11.00G3b(i));
or (3) Interacting with others (see 11.00G3b(ii)); or (4) Concentrating, persisting, or maintaining
pace (see 11.00G3b(iii)); or (5). Adapting or managing oneself (see 11.00G3b(iv)).

It is well established that in order to find that a claimant meets a Listing, the individual
must manifest all of a Listing's precise criteria. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)
And, the Plaintiff bears the burden of proving that JS met a Listing. *See Selders v. Sullivan*, 914
F.2d 614, 619 (5th Cir. 1990).

In this case, Plaintiff has not demonstrated that the seizures occurred at least once per
month for three consecutive months as Listing 11.02A requires. Instead, Plaintiff, while
acknowledging as much, asks the court to "infer" from lay testimony of relatives that Plaintiff
meets or equals 11.02A. *See* Pl.'s Br. at 11-12. There is no authority cited by Plaintiff to suggest
that this court may infer from lay testimony that a listing has been met, and a claimant shows that
his impairment or combination of impairments is medically "equivalent" to a listed impairment by
presenting *medical* findings that are at least of equal medical significance to all the criteria for the
most analogous listed impairment. *See Zebley*, 493 U.S. at 529, 531; *see also* 20 C.F.R.
§ 404.1526(b).

With respect to Listing 11.02C, Plaintiff has not demonstrated that he had marked
limitations in physical or mental functioning. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02C.
Furthermore, Listing 11.02A and Listing 11.02C both specify that the seizures must occur "despite
adherence to prescribed treatment," and the regulations further instruct that the agency does not
count seizures that occur when the claimant is not adhering to prescribed treatment without good
reason. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02 (emphasis added); *see also* 20 C.F.R. Pt.
404, Subpt. P, App. 1, § 11.00(H)(4)(d). In the instant case, the ALJ cited, and the Commissioner

recites in its brief on appeal, significant evidence of such non-compliance. Plaintiff's argument to the contrary is without merit or legal authority.

Secondly, Plaintiff next argues that the ALJ should have found that JS's hypertension met or medically equaled a Listing, asserting generally that JS met one of the Listings in section 4.00, which pertains to cardiovascular impairments. *See* Pl.'s Br. at 8-9. Yet, Plaintiff has not identified precisely which cardiovascular Listing she alleges that JS's hypertension met or medically-equaled. Nor has she analyzed the relevant law or explained how the evidence shows that JS's hypertension met or medically-equaled a Listing. As the Commissioner notes, this failure necessarily results in a failure of plaintiff to meet her step 3 burden. *See also, White v. Astrue*, No. 09-16, 2009 WL 4823843, at *2 (M.D. La. Dec. 10, 2009) (unpublished) (concluding that the plaintiff did not meet his step three burden where he did not identify the Listing(s) he allegedly met or analyze the relevant law and facts to support his contention that he met or medically equaled a Listing). Further, to the extent plaintiff suggests that the fact that death certificate recites that JS died of hypertension-related causes on January 25,2021, does not satisfy the Plaintiff's burden. Here, the ALJ issued his decision in January 2020, establishing the end of the relevant period, and that was approximately one year prior to JS's death. *See* Tr. at 18-29. As the Commissioner points out, the Fifth Circuit has long held that degeneration of a claimant's condition after the relevant period does not undermine the ALJ's decision. *See Torres v. Shalala*, 48 F.3d 887, 894 n.12 (5th Cir. 1995).

Plaintiff next argues that his mental impairments satisfied both Listings 12.04 and 12.05. *See* Pl.'s Br. at 10. Listing 12.04 corresponds with depressive, bipolar, and related disorders, and is satisfied when either A or B, or A and C, of the listed requirements is met. In this case, plaintiff

argues she has met or equaled 12.04B and 12.04C requiring bipolar disorder, characterized by three or more of the following:

> a. Pressured speech;
> b. Flight of ideas;
> c. Inflated self-esteem;
> d. Decreased need for sleep;
> e. Distractibility;
> f. Involvement in activities that have a high probability of painful consequences that are not recognized; or
> g. Increase in goal-directed activity or psychomotor agitation.
> AND
> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F): 1. Understand, remember, or apply information (see 12.00E1).
> 2. Interact with others (see 12.00E2).
> 3. Concentrate, persist, or maintain pace (see 12.00E3).
> 4. Adapt or manage oneself (see 12.00E4).
> OR
> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

First, as to 1204B substantial evidence shows that JS did not have "marked" limitations in the four domains of mental functioning. Tr. at 23; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§12.02(B)(1)-(4), 12.05(B)(2)(a)-(d). As the ALJ recognized, State agency psychological consultant Bryman, Williams, Ph.D., reviewed JS's record in August 2018 and determined that Plaintiff had mild limitations in the domain of understanding, remembering, and applying information; no limitations in the domain of interacting with others; moderate limitations in the domain of concentrating, persisting, or maintaining pace; and mild limitations in the domain of

adapting and managing oneself. Tr. at 23, 98. These findings provide substantial evidence supporting the ALJ's finding of no more than moderate mental limitations. Tr. at 23. Because substantial evidence supports the ALJ's finding that JS did not have "extreme" limitations in one domain or "marked" limitations in two domains, Plaintiff has not demonstrated that JS meets Listing 12.04B. As for 12.04C, Plaintiff has not demonstrated that JS met Listing 12.04C because she has not demonstrated that JS had a serious and persistent mental disorder. As concerns 12.05A claimant demonstrates that he meets Listing 12.05 by demonstrating that his intellectual disorder satisfies either Listing 12.05A or 12.05B. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. A claimant demonstrates that he meets Listing 12.05A by satisfying all three criteria:

> 1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and
> 2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and
> 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05A.

Plaintiff has not shown that he meets Listing 12.05A. First, the ALJ properly determined that JS did not meet Listing 12.05A(1) because Plaintiff has not shown that JS was unable to participate in standardized intelligence testing. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05A(1). To the contrary, consultative examiner Michael Whelan, Ph.D., estimated that JS had an IQ near 70. Tr. at 337. Further, JS reported to Dr. Whelan that he was able to care for his immediate needs, which demonstrates that he was not dependent upon others for his personal needs as Listing 12.05A(2) requires. Tr. at 337; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05A(2). Next, Plaintiff has not demonstrated that JS met Listing 12.05B because JS did not meet the

paragraph B criteria, which are identical in both listing12.04B and 12.05B. *See* discussion above of B criteria in this case under 12.04. In short, Plaintiff has not satisfied her burden of showing that JS met or medically equaled any Listing. See Pl.'s Br. at 6-12. The Fifth Circuit grants the Commissioner's decision "great deference [,] and [it] will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

    (B) Does substantial evidence support the ALJ's residual functional capacity (RFC) finding?

To begin, the RFC is the most an individual can do on a sustained basis after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks. *See* 20 C.F.R. § 404.1545(a). The ALJ has the final responsibility for determining an individual's RFC based on all of the relevant medical and other evidence. *See Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012); 20 C.F.R. §§ 404.1545, 404.1546. The RFC assessment is an administrative finding of fact, and the ALJ, not a medical source, is responsible for this assessment. *See* 20 C.F.R. § 404.1546(c); see also Taylor, 706 F.3d at 602-03. As the Fifth Circuit has stated, "experienced ALJs can draw their own conclusions [as to disability status] based on accurate medical information." *Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018).

As concerns physical limitations, in this case, Plaintiff argues that the ALJ should have found that JS had exertional limitations, particularly with respect to his ability to lift, carry, push, and pull. Plaintiff relies on consultative examiner George Smith, M.D.'s 2015 statement that JS would have impaired use of his right arm due to diminished range of motion. Tr. at 316; *see also* Pl.'s Br. at 18. The ALJ considered Dr. Smith's statement regarding JS's right arm, but found it was not persuasive. Tr. at 21. As the ALJ noted, JS reported that he injured his right arm when he

was a child. Tr. at 21, 336. Yet, he was able to work for many years as a concrete finisher – a position which the vocational expert identified as heavy work. Tr. at 27, 88; *see* 20 C.F.R. § 404.1567(d). A claimant's ability to work despite a preexisting condition supports finding of no disability. *See Fraga v. Bowen*, 810 F.2d 1296, 1305 n.11 (5th Cir. 1987). Further, although Dr. Smith observed that JS was unable to extend his right arm fully, Dr. Smith nevertheless observed that JS had strong grip strength bilaterally. Tr. at 316. The ALJ thus properly declined to accept Dr. Smith's opinion regarding JS's right arm. Tr. at 21.

Plaintiff also alleges that the ALJ rejected the state agency medical consultant's opinion that JS had limited use of his right arm. See Pl.'s Br. 21. However, the Commissioner demonstrates that the record shows that agency physician Carol Kossman, M.D., reviewed JS's records in August 2018 and determined that he had no exertional or manipulative limitations. Tr. at 99-100. The ALJ considered Dr. Kossman's prior administrative finding and concluded that the opinion was persuasive because it was consistent with the overall record, and it was supported by objective findings. Tr. at 27. In arguing that he had exertional limitations, Plaintiff also relies on JS's age at the time of the hearing. *See* Pl.'s Br. at 19, 24. The regulations explain that the Commissioner considers an individual's age in conjunction with the individual's vocational profile when determining whether the individual can adjust to other work. *See* 20 C.F.R. §§ 404.1560(c), 404.1563. Because education represents a vocational factor analyzed at step five of the sequential process, the ALJ was not required to consider JS's age when assessing his RFC. *See* 20 C.F.R. § 404.1560(c)(1) (the ALJ considers vocational factors, such as age, when analyzing whether an individual can perform other work.) Moreover, as the Commissioner notes, although Plaintiff emphasizes that the ALJ found that JS could perform a full range of work at all exertional levels, the jobs the ALJ relied on at step five represent medium work, not heavy or very heavy work. Tr.

at 25, 27-28. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c). JS's ability to perform medium work is supported by Dr. Smith's notation that JS had a normal gait and Dr. Kossman's opinion that Plaintiff had no exertional limitations. Tr. at 99-101, 315-16. In the court's view, Plaintiff has not demonstrated that the ALJ erred by excluding exertional limitations from the RFC finding, nor has he shown harmful error by citing objective evidence showing that physical functional limitations were present during the relevant period beyond those included in the RFC.

Plaintiff next argues the ALJ did not conduct a function-by-function assessment of JS's physical abilities. *See* Pl.'s Br. at 12-13, 15. SSR 96-8p requires the ALJ to assess an individual's "work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945." Subsections (b), (c), and (d) require consideration of an individual's physical, mental, and other work-related abilities. See 20 C.F.R. § 404.1545(b)-(d). Physical abilities include the "seven strength demands" of sitting, standing, walking, lifting, pushing, pulling, and carrying, as well as postural and manipulative limitations. *See* SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. § 404.1545(b). However, as the Commissioner points out, the ALJ's reference to a prior administrative medical finding completed by agency physician Dr. Kossman, which contained a function-by-function assessment of Plaintiff's physical abilities, shows that the ALJ considered all of the work-related abilities listed in SSR 96-8p. Tr. at 27, 99-101. *See Beck v. Barnhart*, 205 F. App'x 207, 213-14 (5th Cir. 2006) (unpublished). In the instant case, Dr. Kossman found that JS had no exertional limitations; he could never climb ladders, ropes, or scaffolds; he had no limitations balancing, stooping, kneeling, crouching,

crawling, or climbing ramps/stairs; he had no manipulative limitations; and he must avoid even moderate exposure to hazards but had no other environmental limitations. Tr. at 99-101. In short, the ALJ properly considered JS's physical abilities on a function-by-function basis. Tr. at 27.

Addressing next mental limitations, Plaintiff contends that the ALJ did not consider JS's ability to perform basic work-related mental activities. *See* Pl.'s Br. at 15. SSR 85-15 provides that "[t]he decisionmaker must not assume that failure to meet or equal a listed mental impairment equates with capacity to do at least unskilled work," and explains that unskilled work includes the ability "to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at *4. Here, the Commissioner correctly notes the ALJ did not automatically assume that JS could perform unskilled work. Tr. at 25.

Rather, in assessing JS's RFC, the ALJ considered the medical evidence, including the agency psychological consultant's opinion. Tr. at 27. Dr. Williams determined that JS appeared capable of understanding and carrying out minimal instructions with minimal impairment; that he was moderately impaired in maintaining attention and concentration adequately for two-hour periods; that he had the ability to understand, remember, and carry out complex duties required by skilled work; that he appeared capable of completing a normal workweek with minimal interruptions from psychologically-based symptoms; and that he had minimal impairment in his ability to relate to and interact with others to get needs met. Tr. at 27, 102-03. The ALJ also considered consultative examiner Dr. Whelan's remark that JS probably had a moderately severe major depressive disorder secondary to his seizures and loss of income. Tr. at 27, 337. The ALJ properly accounted for JS's mental impairments and limitations by limiting him to only simple, repetitive tasks that involved understanding, remembering, and carrying out simple tasks, and

finding that JS should not perform fast production-pace jobs that included numeric goals to be performed within a strict guideline. Tr. at 25. *See Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 904–05 (5th Cir. 2010).

Plaintiff also alleges that the ALJ erred by not including an explicit discussion of the testimony provided by Antoinette Montgomery, JS's sister. *See* Pl.'s Br. at 22. Contrary to Plaintiff's assertion, JS filed his application in March 2018 and thus his application is governed by the revised regulatory framework set forth in 20 C.F.R. § 404.1520c, not the framework in 20 C.F.R. § 404.1527. The revised framework specifies that the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources" according to the requirements applicable to medical sources. 20 C.F.R. § 404.1520c(d). Here, the ALJ expressly discussed Ms. Montgomery's testimony, including her testimony that JS lived with her but did not help with chores and that he had more frequent seizures. Tr. at 26, 82, 84. The ALJ thus satisfied his duty to consider Ms. Montgomery's testimony and Plaintiff's argument to the contrary is without merit.

Plaintiff also contends that the ALJ did not consider all of JS's impairments and the combination of his impairments. *See* Pl.'s Br. at 22-23, 28. Contrary to Plaintiff's argument, the ALJ recognized his duty to consider all of JS's impairments, including non-severe impairments, when assessing JS's RFC. Tr. at 20. However, the mere presence of an impairment does not establish disability or specific functional limitations. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). Nor is the ALJ, as the plaintiff suggests, required to articulate a discussion of every finding in each and every treatment note. *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). Plaintiff has not demonstrated that the ALJ did not properly consider JS's impairments or that any error in considering JS's impairments represents harmful error that warrants remand.

(C) <u>Did the ALJ properly evaluate JS's symptoms?</u>

Plaintiff suggests that the ALJ did not perform a proper symptom evaluation, but as the Commissioner points out, the ALJ affirmatively cited SSR 16-3p and 20 C.F.R. § 404.1529, properly considered JS's statements, and found that JS's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other record evidence. Tr. at 25-26; *see* Pl.'s Br. at 24-26; *Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. 2005). While accurate that the regulations and SSR 16-3p explain that in addition to the objective medical evidence, the ALJ also evaluates the intensity, persistence and limiting effects of an individual's symptoms by considering a host of factors where applicable, importantly, the Fifth Circuit recognizes that the ALJ need not follow "formalistic rules" when assessing an individual's statements regarding his symptoms. *See Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994); *see also Prince*, 418 F. Supp. 2d at 871 ("[N]either the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered") (citing *Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001)).

In this case, when considering JS's statements, the ALJ discussed his daily activities, including statements that he was able to care for his personal needs but had shakiness and that he could clean some but did not drive, shop, or cook. Tr. at 26, 236-39. The ALJ also noted that JS testified he was able to perform some household chores and yard work. Tr. at 27, 75, 82.

The ALJ also considered the location, duration, frequency, and intensity of JS's symptoms, but recognized also that the records indicate that JS received medical attention for seizures once every three to six months. Tr. at 26, 234-352. The ALJ discussed JS's statement that he took

medication for seizures and high blood pressure, but also noted treatment records demonstrating repeated non-compliance with medication. Medical conditions which can be reasonably controlled by treatment are not disabling. *See Lovelace v. Bowen*, 813 F. 55, 59 (5th Cir. 1987). In this case, the ALJ's decision indicates that he considered JS's noncompliance with his seizure medication primarily as part of the symptom evaluation and RFC assessment. Tr. at 26.

Finally, Plaintiff argues that the ALJ improperly considered JS's failure to follow prescribed treatment, citing SSR 18-3p. *See* Pl.'s Br. at 28-30. Contrary to Plaintiff's argument, SSR 18-3p explains that the agency will only determine whether a claimant failed to follow prescribed treatment if, among other conditions, the individual would otherwise be entitled to disability benefits. In this case the ALJ did not determine that JS would otherwise be disabled. Instead, as noted, the ALJ's decision indicates that he considered JS's noncompliance with his seizure medication primarily as part of the symptom evaluation and RFC assessment. Indeed, the ALJ noted that JS was able to work during the relevant period. Tr. at 27; *see Murray v. Astrue*, No. 10-20698, 419 F. App'x 539, 541 (5th Cir. Mar. 24, 2011) (unpublished) (indicating that the ALJ may properly consider an individual's ability to perform part time work during the relevant period) (citing *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995)). *See* 20 C.F.R. § 404. Similarly, the ALJ noted that JS alleged that he had seizures since he was a child, yet he was able to perform work at the substantial gainful activity level of many years. Tr. at 26, 211-12, 214, 234, 336. The ALJ may consider other factors when analyzing a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3)(vii). A claimant's ability to work despite a pre-existing condition supports a finding of no disability. *See Fraga v. Bowen*, 810 F.2d 1296, 1305 n. 11 (5th Cir. 1987).

In this case, the ALJ's decision demonstrates that he considered the relevant factors and complied with the regulations and SSR 16-3p when evaluating JS's symptoms Moreover, Plaintiff

has not demonstrated that any purported error the ALJ may have made when evaluating JS's symptoms was harmful. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (noting that the ALJ's decision relied very little on the assessment of the claimant's statements and it was inconceivable that the ALJ would have reached a different conclusion).

(D) Did the ALJ err at step five of the sequential evaluation process?

Plaintiff contends that the ALJ failed to make a finding regarding the transferability of JS's work skills. *See* Pl.'s Br. at 16-18. Although SSR 82-41 requires that the ALJ cite specific transferable work skills, the ALJ is only required to do so in cases where the transferability of skills is at issue. *See* SSR 82-41, 1982 WL 31389, at *7. SSR 82-41 explains that transferable skills are rarely decisive because a finding of no disability at step five may be supported by the ability to perform unskilled work. SSR 82-41, 1982 WL 31389, at *1. In this case the vocational expert identified, and the ALJ relied on, jobs as a kitchen helper, cook helper, and laundry laborer—all unskilled work positions. Tr. at 28, 89-90. The ALJ therefore properly stated that transferability of skills was not material. Tr. at 27. Plaintiff's argument to the contrary is without merit. *See* Pl.'s Br. at 16-18.

Plaintiff next alleges that JS's vocational profile "somewhat" approximates Rule 203.01 and thus he argues that the ALJ should have found that JS was disabled pursuant to the Medical-Vocational Guidelines. *See* Pl.'s Br. at 20. In order for a Grid Rule to direct a finding of disabled, an individual's age, education, past relevant work, and RFC must correspond exactly to the attributes described in the Rule. See 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(a). Here, Grid Rule 203.01 directs a finding of "disabled" for an individual closely-approaching retirement age, with an RFC for medium work, who was illiterate or had a marginal education, and possessed unskilled or no past relevant work The record demonstrates that JS was 55 years old and thus he

was advanced age, not closely approaching retirement age, at the time of the ALJ's decision. Tr. at 27. *See* 20 C.F.R. § 404.1563(e). Further, the ALJ found that JS could perform work at all exertional levels and thus he was not limited to medium work. Tr. at 25. Next, the ALJ found that JS had a high school education, not a marginal education. Tr. at 27. Finally, Rule 203.01 corresponds to an individual with either no past relevant work or unskilled past relevant work, whereas JS's past relevant work consisted of skilled work. Tr. at 27, 88. Therefore, JS's vocational profile does not match Medical-Vocational Guideline Rule 203.01 and this rule does not direct a finding of disability. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 2, R. 203.01.

Plaintiff also argues that the ALJ should have found that JS met one of the special vocational profiles listed in 20 C.F.R. § 404.1562. *See* Pl.'s Br. at 19-21. The regulations provide special vocational profiles that render a claimant disabled if a) he had a marginal education, performed only arduous unskilled physical labor for 35 years or more, was not working, and could no longer perform arduous unskilled work because of a severe impairment; or b) he is at least 55 years old, had a limited education, and had no past relevant work experience. 20 C.F.R. § 404.1562. In this case, JS does not meet 20 C.F.R. § 404.1562(a) because the record shows that his past relevant work consisted of many years of skilled work, not arduous unskilled work. See 20 C.F.R. § 404.1562(a); see also SSR 82-63, 1982 WL 31390, *3 ("Employment in semiskilled or skilled work generally would rule out the application of sections 404.1562/416.962 of the regulations"). The vocational expert identified JS's past relevant work as a concrete finisher, which she described as skilled work with an SVP of 7. Tr. at 27, 88. Plaintiff has also not demonstrated that JS had only a marginal education, as the ALJ found, and the record supports, that JS obtained a high school education. Tr. at 27.

Nor does JS meet the criteria in 20 C.F.R. § 404.1562(b) because as discussed above, JS had skilled past relevant work experience. See 20 C.F.R. § 404.1562(b). JS thus does not satisfy the criteria of either of the special medical vocational profiles, and the ALJ properly considered the vocational expert's testimony and applied the Medical-Vocational Guideline Rules as a framework to find that JS was not disabled. Tr. at 27-28. *See* SSR 82-63, 1982 WL 31390, at *5.

Lastly, Plaintiff argues that the ALJ erred by finding that JS was a high school graduate because he was in special education. Tr. at 27, 70, 76; *see* Pl.'s Br. at 20-21. But the court agrees with the Commissioner: contrary to Plaintiff's allegation, the agency will generally use the claimant's highest numerical grade completed when determining the claimant's education level. *See* SSR 20-01p, 2020 WL 1285114, at *2. In this case, JS reported in his application materials that he completed twelfth grade in 1983 but attended special education classes. Tr. at 225. He similarly testified that he completed high school but received a certificate rather than a diploma. Tr. at 70. Although evidence may suggest that a claimant had a lower education level, the agency "will not find an individual's education category to be lower than his or her highest level of formal education based solely on an individual's history of having received special education." SSR 20-01p, 2020 WL 1285114, at *3. Further, a claimant's past work experience may show that the claimant as a higher educational ability than his formal educational level. *See id.* at *2. As discussed, JS, in this case had past relevant work experience as a concrete finisher—which is classified as skilled work. Tr. at 27, 88. In short, there is substantial evidence to support the ALJ's finding that JS had a high school education notwithstanding the fact that he was in a special education program.

(E) <u>Did the ALJ Properly Develop the Record?</u>

Plaintiff contends that the ALJ failed to develop the record because he did not order an updated physical consultative examination of JS. The law is well established that the ALJ retains discretion in ordering a consultative examination. *See Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989). Controlling authority holds that an ALJ is not required to obtain a consultative examination unless "such an examination is necessary to enable the [ALJ] to make the disability decision." *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977).

Regarding whether a consultative examination should have been obtained, the relevant regulation lists four situations that "may" require a consultative examination:

> (1) The additional evidence needed is not contained in the medical records; (2) The evidence that may have been available from treating or other medical sources cannot be obtained for reasons beyond a claimant's control, such as death or noncooperation of a medical source; (3) Highly technical or specialized medical evidence that the Commissioner needs is not available from claimant's treating or other medical sources; or (4) There is an indication of a change in a claimant's condition that is likely to affect his/her ability to work.

*See* 20 C.F.R. § 404.1519a(b).

In this case Plaintiff has failed to show that the facts here satisfy any of the conditions for the ALJ to consider in exercising his discretion whether to obtain another consultative examination. *See* Pl.'s Br. at 28, 33; 20 C.F.R. § 404.1519a(b). In the absence of any showing that the record before the ALJ was inadequate for an informed decision to have been rendered, Plaintiff has failed to identify an error that requires remand. And, Plaintiff has also failed to show that any failure to obtain an additional consultative examination resulted in the requisite prejudice necessary to establish the presence of harmful error. The Fifth Circuit has held that the Courts should not reverse an ALJ's decision for failing to adequately develop the record unless the claimant demonstrates that prejudice resulted from the alleged error. *See Brock*, 84 F.3d at 728-

29. To demonstrate prejudice, the claimant must show that he "could and would have adduced evidence that might have altered the result." *Id.* at 728 (citing *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)). Plaintiff has not made such a showing in this case. Rather, Plaintiff merely asserts that an additional consultative examination should have been obtained because the prior examination was more than three years old—even though such examination occurred during the relevant period. Tr. at 314-17; *see* Pl.'s Br. at 28. The mere fact that a prior examination occurred more than three years prior to the ALJ's decision does not, of itself, demonstrate prejudice necessary to remand a case, including this one.

Finally, Plaintiff argues that the ALJ failed to properly develop the record because he declined to admit records from Leflore County Health Center. *See* Pl.'s Br. at 31-32. The regulations require the claimant to submit or inform the ALJ of any written evidence no later than five business days prior to the claimant's administrative hearing—in this case no later than Monday, October 28, 2019. See 20 C.F.R. § 404.935(a); SSR 17-4p, 2017 WL 4736894, at *2. The ALJ noted during the November 4, 2019, administrative hearing that he was not admitting records from Leflore County because JS did not submit or notify the ALJ of this evidence at least five business days before his hearing. Tr. at 18, 66-67. Plaintiff has not demonstrated that one of the exceptions to the five-day rule applies. *See* Pl.'s Br. at 31-32; 20 C.F.R. § 404.935(b). Plaintiff has therefore failed to show that the ALJ erred by declining to consider the additional records. See Pl.'s Br. at 25-26; SSR 17-4p, 2017 WL 4736894, at *3 ("The ALJ may decline to consider or obtain any evidence if disclosure takes place after this date [five business days prior to the hearing], unless certain circumstances outlined in the regulations apply"). Moreover, Plaintiff has not met her burden of proving that any error that the ALJ may have made in proceeding without these

records was harmful. The burden of proving that an error was harmful normally falls upon the party attacking the agency's determination. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## CONCLUSION

As explained above, the Commissioner's decision is supported by substantial evidence and without prejudicial legal error. It is affirmed.

**SO ORDERED**, this the 4th day of February, 2022.

*/s/*  Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**